# UNITED STATES DISTRICT COURT

## DISTRICT OF CONNECTICUT

KYRON MILNER,                    :
    Plaintiff,                   :
                                 :
v.                               :     Case No. 3:14cv1544(VLB)
                                 :
KARL LEWIS, et al.               :
    Defendants.                  :

## RULING ON MOTION FOR SUMMARY JUDGMENT

The plaintiff, Kyron Milner, is currently incarcerated at Corrigan-Radgowski Correctional Institution in Uncasville, Connecticut.  He initiated this action by filing a civil rights complaint against Director of Classification and Population Management Karl Lewis, Deputy Commissioner Scott Semple, Counselor Sean O'Neill, Warden Anne Cournoyer, Counselor Supervisors M. Vazquez and Jacqueline Bashan, Commissioner James Dzurenda, and Classification Committee Member John Doe.  On March 9, 2015, the court dismissed the complaint pursuant to 28 U.S.C. § 1915A(b).   On April 9, 2015, the plaintiff filed a motion for reconsideration and a motion for leave to file an amended complaint. On April 14, 2015, the court denied the motion for reconsideration and denied the motion to amend without prejudice to re-filing the motion accompanied by a proposed amended complaint.

On April 27, 2015, the plaintiff filed a notice of appeal of the ruling dismissing the complaint and a motion for leave to amend.  The notice of appeal of the court's dismissal of the complaint deprived the court of jurisdiction to rule on the renewed motion to amend.  On July 16, 2015, the Court of Appeals for the

Second Circuit remanded the matter to this court to rule on the plaintiff's renewed motion for leave to amend.

On November 3, 2015, the court granted the motion to amend and reviewed the claims in the amended complaint.  The amended complaint named Director of Classification Lewis, Deputy Commissioner Semple, Counselor O'Neill, Warden Cournoyer, Counselor Supervisors Vazquez and Bashan and Commissioner Dzurenda as defendants.  The court concluded that the claims against the defendants in their official capacities for money damages would be dismissed pursuant to 28 U.S.C. § 1915A(b)(2) and the claim that the defendants had violated the plaintiff's due process rights in connection with his placement in Administrative Segregation would proceed against all defendants in their individual capacities and against defendant Dzurenda in his official capacity.

The defendants have filed a motion for summary judgment.  For the reasons set forth below, the motion will be GRANTED IN PART and DENIED IN PART.

I.    <u>Standard of Review</u>

Summary judgment should be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if it "might affect the outcome of the suit under the governing law," and is "genuine" if "a reasonable jury could return a verdict for the nonmoving party" based on it.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**2**

The moving party bears the burden of proving that no genuine factual disputes exist.  *See Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010).  "In determining whether that burden has been met, the court is required to resolve all ambiguities and credit all factual inferences that could be drawn in favor of the party against whom summary judgment is sought."  *Id.* (citing *Anderson*, 477 U.S. at 255; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  If there is any evidence in the record that could reasonably support a jury's verdict for the nonmoving party, summary judgment must be denied."  *Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH*, 446 F.3d 313, 315-16 (2d Cir. 2006) (internal quotation marks and citation omitted).  In addition, determinations of the weight to accord evidence or assessments of the credibility of witnesses are improper on a motion for summary judgment, as such are within the sole province of the jury.  *Hayes v. New York City Dep't of Corr.*, 84 F. 3d 614, 619 (2d Cir. 1996).

When a motion for summary judgment is supported by documentary evidence and sworn affidavits and "demonstrates the absence of a genuine issue of material fact," the nonmoving party must do more than vaguely assert the existence of some unspecified disputed material facts or "rely on conclusory allegations or unsubstantiated speculation."  *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (citation omitted).  Thus, a plaintiff opposing a motion for summary judgment, may not rely solely on "the allegations of the pleadings, or on conclusory statements, or on mere assertions that

affidavits supporting the motion for summary judgment are not credible."
*Gottlieb v. Cty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citation
omitted).  Rather, a plaintiff must present specific admissible evidence in support
of his or her allegations and "showing a genuinely disputed factual issue that is
material under the applicable legal principles."  *Major League Baseball
Properties, Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008) (citations omitted).
Where there is no evidence upon which a jury could properly proceed to find a
verdict for the party producing it and upon whom the onus of proof is imposed,
such as where the evidence offered consists of conclusory assertions without
further support in the record, summary judgment may lie.  *See Fincher v.
Depository Trust and Clearance Co.*, 604 F.3d 712, 726-27 (2d Cir. 2010).

II.    <u>Facts</u>[1]

        During the morning of October 4, 2013, the plaintiff was involved in a verbal
discussion with Correctional Officer Szymczak Kendrick in the F-1 housing unit at
Enfield Correctional Institution ("Enfield").  When the discussion escalated,
Officer Szymczak radioed for assistance.   Correctional Officer Kendrick
responded and became involved in a physical altercation with the plaintiff.
Officer Szymczak called a code to summon additional assistance from other
correctional personnel.

        Lieutenant Rivera and other officers responded to the code.  During

---

[1]  **The relevant facts are taken from the Defendants' Local Rule 56(a)1 and
the Plaintiff's Local 56(a)2 Statement and the exhibits attached to those
statements including the affidavit of the Plaintiff and the affidavit of Defendant**

attempts to gain control of the plaintiff, Lieutenant Rivera utilized a one second burst of a chemical agent into the plaintiff's facial area.  After gaining control of the plaintiff and placing him in handcuffs, officers escorted him to the restrictive housing unit, decontaminated him from the effects of the chemical agent and placed him in a cell.

At approximately 2:00 p.m. that afternoon, Correctional Officer Kendrick issued the plaintiff a disciplinary report for assault on a Department of Correction employee, a Class A offense.  He claimed that the plaintiff had struck him during the incident that morning.  A prison official at Enfield issued a formal order that the plaintiff be removed from general population and placed in a restrictive housing unit on administrative detention pending the disposition of the disciplinary report for assault on correctional staff.

Later that day, a Connecticut State Trooper arrived at Enfield and interviewed Officer Kendrick and the plaintiff.  Officer Kendrick chose to press criminal charges against the plaintiff.  The plaintiff claimed that he had been assaulted and wanted to press charges against correctional staff.  At approximately 4:00 p.m., officers at Enfield transported the plaintiff to Northern Correctional Institution ("Northern"), a level 5 security facility.

Prison officials involved in the incident classified it as a Level 2 Incident. Pursuant to State of Connecticut Administrative Directive 9.2(12)(C)(1), an inmate who has been involved in a Level 1 assault on a correctional employee should

---

O'Neill.  *See* ECF Nos. 32-2, 32-4 through 32-11, 33-1 through 33-3.

automatically be placed in administrative detention and be reviewed for placement on administrative segregation.  A level 1 assault is defined in State of Connecticut Administrative Directive 6.6 as involving a Level 1 incident.

On October 23, 2013, the plaintiff was present and made a statement during a hearing in connection with the disciplinary report for assault on a correctional officer.  After the hearing, the disciplinary hearing officer found the plaintiff guilty of a Class A assault on a Department of Correction employee and sanctioned the plaintiff to thirty days of punitive segregation, sixty days loss of visitation, ninety days loss of telephone privileges and fifty days loss of risk reduction earned credits.

On October 31, 2013, Correctional Counselor O'Neill completed a Notification of Hearing CN 9402 form, indicating that at the request of Warden Cournoyer, a hearing would be held to consider whether the plaintiff should be placed on administrative segregation.  The reasons for the hearing were described as: plaintiff's assault of a Department of Correction employee on October 4, 2013, finding of guilt on disciplinary charge of assault on a Department of Correction employee, and sanctions imposed pursuant to the guilty finding, investigation by the Connecticut State Police of assault by plaintiff on a peace officer and plaintiff's prior violent conduct, including a history of security risk group threat activity.

On November 5, 2013, the plaintiff met with Correctional Counselor Bachan, who had been assigned to be his advocate for purposes of the

6

classification hearing.  During the meeting, the plaintiff informed Counselor Bachan that he would prepare a written statement to submit at the hearing.

On November 6, 2013, the plaintiff attended a classification hearing to determine whether he should be placed in administrative segregation.  Counselor Supervisor Vazquez served as the administrative segregation hearing officer.  Counselor Supervisor Bachan was present at the hearing as the plaintiff's advocate and Counselor O'Neill was present as the hearing recorder.  The plaintiff prepared a written statement in response to the allegations that formed the basis for the administrative segregation hearing.  After the hearing, Counselor Supervisor Bachan provided Counselor O'Neill with a copy of the plaintiff's written statement to be placed in the plaintiff's classification file.

On November 6, 2013, based on a memorandum from Warden Cournoyer, incident reports and plaintiff's disciplinary reports, Counselor Supervisor Vazquez made a recommendation regarding the plaintiff's placement on Administrative Segregation.  On November 15, 2013, Director of Classification and Population Management Lewis authorized the plaintiff's placement on administrative segregation.  The plaintiff received notice of the decision later that day.

III.   <u>Discussion</u>

The defendants include three arguments in their motion.  They contend that (1) the plaintiff failed to exhaust his administrative remedies as to his claim regarding cell conditions at Northern; (2) the plaintiff has failed to state a claim

for the denial of his procedural due process rights in connection with his placement on administrative segregation and (3) they are entitled to qualified immunity.  In opposition to the motion for summary judgment, the plaintiff argues that he did exhaust his administrative remedies and that the defendants failed to provide him with all of the required due process protections in connection with this placement on administrative segregation.

A.    Exhaustion of Administrative Remedies

The complaint included an allegation that on November 12, 2013, the plaintiff suffered an injury to his left foot and ankle after being exposed to freezing temperatures in his cell at Northern.  *See* Compl., ECF No. 1 at 10.  The plaintiff claimed that the injury caused pain and swelling in his foot and ankle for several days and that he underwent x-rays.  *See id.*  A physician informed the plaintiff that he had flat feet and that the injury that he had suffered on November 12, 2013 had aggravated this condition.  *See id.*  The plaintiff alleged that he took pain medication beginning on May 4, 2014, to alleviate the chronic pain in his foot.  *See id.*

On March 9, 2015, the court addressed the claims in the complaint and observed that the plaintiff had not alleged that any of the defendants were aware of or involved in the conditions that resulted in his ankle and foot injury in November 2013.  *See* Initial Review Order, ECF No. 6 at 5.  Nor had the plaintiff asserted facts to suggest that any defendant was deliberately indifferent to his medical needs.  *See id.*  The court dismissed these claims because the plaintiff

8

had not alleged that any defendant had violated his federally or constitutionally protected rights in connection with the conditions in his cell or the injuries that he suffered to his ankle and foot. *See id.* at 6.

These same allegations are included in the amended complaint. *See* Am. Compl., ECF No. 19 at 4. The plaintiff does not mention the Eighth Amendment or assert that any of the defendants violated his Eighth Amendment rights in connection with the injury to his foot and ankle.

The defendants argue that the plaintiff failed to exhaust available administrative remedies as to the condition of confinement and deliberate indifference to medical needs claims related to the injury to his left foot and ankle prior to filing this action. In response, the plaintiff states that he has exhausted his administrative remedies and attaches evidence of his attempts to exhaust his remedies to his Local Rule 56(a)2 Statement. *See* Pl.'s Local Rule 56(a)2 Statement, ECF No. 33-3 at ¶¶ 65-68 and Exs. S & T, ECF No. 33-2 at 51-57.

There are no new facts in the amended complaint to suggest that any defendant had knowledge of or was responsible for the freezing temperatures in the plaintiff's cell at Northern in November 2013 or that any defendant was aware of his foot and ankle injuries or the possible need for medical treatment for those injuries. Thus, the plaintiff has not alleged that the defendants violated his Eighth Amendment rights.

The claims of unconstitutional conditions of confinement and/or deliberate indifference to medical needs fail to state a claim upon which relief may be

**9**

granted against the defendants, and are DISMISSED.  *See* 28 U.S.C. §
1915(e)(2)(B)(ii) (court may dismiss "at any time" a claim on which relief may not
be granted).  Accordingly, the court does not reach the defendants' exhaustion
argument.

      **B.**    **Procedural Due Process**

      The defendants argue that the plaintiff has failed to allege that they violated
his due process rights under the Fourteenth Amendment when they placed him
on administrative segregation on November 15, 2013, after an administrative
segregation hearing.  In opposition to the motion for summary judgment, the
plaintiff claims that the defendants failed to provide him with all of the process
that he was due in connection with the administrative segregation hearing and
his long-term placement on administrative segregation.

      The Fourteenth Amendment's Due Process Clause "protects persons
against deprivations of life, liberty, or property."  U.S Const. amend. XIV.
"Liberty interests protected by the Fourteenth Amendment may arise from two
sources—the Due Process Clause itself and the laws of the States."  *Hewitt v.
Helms*, 459 U.S. 460, 466 (1983).  To state a claim for a violation of procedural due
process in connection with his placement in administrative or punitive
segregation, an inmate must show that he had a protected liberty interest in
remaining free from the confinement that he challenges and, if he had such an
interest, that the defendants deprived him of that interest without being afforded

**10**

due process of law.  *See Walker v. Fischer,* 523 F. App'x 43, 44 (2d Cir. 2013)

(citing *Giano v. Selsky,* 238 F.3d 223, 225 (2d Cir. 2001)).

       1.    <u>Liberty Interest</u>

     In *Sandin v. Connor*, 515 U.S. 472 (1995), the Supreme Court reexamined

"the circumstances under which state prison regulations afford inmates a liberty

interest protected by the Due Process Clause."  *Id.* at 474.  The Court explained

that in the prison setting, liberty interests protected by Due Process "will be

generally limited to freedom from restraint which, while not exceeding the

sentence in such an unexpected manner as to give rise to protection by the Due

Process Clause of its own force, . . . nonetheless imposes atypical and significant

hardship on the inmate in relation to the ordinary incidents of prison life."  *Id.* at

484.  The Court held that Inmate Conner's "discipline in segregated confinement

[for 30 days] did not present the type of atypical, significant deprivation in which

a State might conceivably create a liberty interest."  *Id.* at 486.  Thus, an inmate

has a protected liberty interest only if the disciplinary sanctions caused him to

suffer an "atypical and significant hardship" in comparison to "the ordinary

incidents of prison life."  *Id.*

     In *Arce v. Walker*, 139 F.3d 329, 334-35 (2d Cir. 1998), the Second Circuit

concluded that the *Sandin* analysis should be applied to determine whether

placement in non-punitive administrative segregation implicates a liberty interest.

In *Wilkinson v. Austin*, 545 U.S. 209 (2005), the Supreme Court considered a due

process claim asserted by inmates who had been classified for placement in a

high security state prison for safety and security, rather than disciplinary reasons.  In determining whether the inmates had a liberty interest in avoiding confinement in the very restrictive, maximum security prison for an indefinite period of time, the Court applied the standard set forth in *Sandin*.  *See id.* at 223 ("After *Sandin*, it is clear that the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves 'in relation to the ordinary incidents of prison life.'") (quoting *Sandin*, 515 U.S. at 484.).  The Court concluded that the restrictive conditions at Ohio State Penitentiary "taken together [] impose[d] an atypical and significant hardship" on inmates and gave "rise to a liberty interest in their avoidance."  *Id.* at 224.

The Second Circuit has held that "in determining whether [an inmate] endured an atypical and significant hardship" a district court should consider the duration of the inmate's confinement in segregation and "the extent to which the conditions [in] . . . segregation differ from other routine . . . conditions in general population."  *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004) (internal quotation marks and citation omitted).  With regard to duration, the Second Circuit has resisted establishing a "bright line rule that a certain period of . . . confinement [in a restrictive housing unit] automatically fails to implicate due process rights."  *Id.*

The plaintiff has asserted that he spent approximately 297 days in administrative segregation after his transfer to Northern on October 4, 2013.

12

The defendants do not dispute the duration that the plaintiff remained in administrative segregation.  The Second Circuit has explained that when an inmate asserts a due process violation based on his or her confinement in segregation for an intermediate duration of between 101 and 305 days, the court must develop "a detailed record of the conditions of the confinement relative to ordinary prison conditions . . . and make a fact-intensive inquiry, . . . examining the actual circumstances of [the restrictive housing unit] confinement in the case before it without relying on its familiarity with [the restrictive housing unit] conditions in previous cases."  *Id.* at 65 (internal quotation marks and citations omitted).  It is evident that time spent by the plaintiff in administrative segregation falls within the intermediate duration of confinement.

In his amended complaint and affidavit in opposition to the motion for summary judgment, the plaintiff identifies a number of restrictive conditions that were imposed on him during his confinement in administrative segregation.  *See* Milner Aff. at ¶¶ 22, ECF No. 33-1, Ex. B; Am. Compl., ECF No. 19 at ¶¶ 26-28.   He also provides evidence that he served the first phase of the administrative segregation program at Northern and that on February 3, 2014, prison officials at Northern transferred him to Cheshire Correctional Institution to complete the second and third phases of the administrative segregation program.  *See* ECF No. 33-2 at 45-46, Ex. P.  The plaintiff completed the administrative program on July 22, 2014.  *See id.*, Ex. Q at 47-48.

13

The plaintiff identified the following conditions within administrative segregation:  confinement to his cell for twenty-three hours a day and twenty-four hours a day on weekends, strip-searches prior to leaving his cell, application of restraints every time he exited his cell for the first 210 of the 297 days, only one social call, three showers and five hours of recreation per week, freezing temperatures at Northern, excessive noise, deprivation of all property except necessities and lack of opportunities to work, attend school, participate in programs or attend religious services.  *See* Milner Aff. at ¶ 22, ECF No. 33-1, Ex. B.  In addition, he was confined in cells that were near mentally ill inmates who screamed and banged on their doors during the night, spread feces on the walls and floors of their cells and flooded their cells.  *See id.*  He was also exposed to chemical agents when prison officials forcefully removed the mentally ill inmates from their cells.  *See id.*  In addition to his own affidavit, the plaintiff has filed the affidavits of two other inmates who have averred that they suffered similar conditions of confinement during the same time period that the plaintiff was confined in administrative segregation.  *See* Belle Aff., ECF No. 33-2, Ex. M; Lynn Aff., ECF No. 33-2, Ex. N.

The defendants argue that the plaintiff has not alleged that he suffered an atypical or significant hardship as a result of the conditions in administrative segregation during his 297-day confinement.  The defendants, however, do not acknowledge the many restrictive conditions outlined by the plaintiff in the amended complaint and his affidavit.  Instead, they only address the plaintiff's

14

allegations that he was required to wear restraints at all times when he exited his cell and that the temperature in his cell was freezing. Without support, they argue that safety and security concerns constitute a legitimate basis for the use of restraints on inmates any time they leave their cells and that the plaintiff has not established that the temperature in his cell was different from the temperature in the rest of the prison facility.

The defendants have failed to introduce any evidence concerning the conditions in administrative segregation at Northern and Cheshire or the conditions in general population. Nor have they submitted any evidence to rebut the plaintiff's sworn affidavit or the affidavits of other inmates. Thus, the defendants have offered no support for their argument that the conditions that the plaintiff claims to have suffered during his confinement in administrative segregation were not atypical or difficult. The Eleventh Circuit Court of Appeals has held that similar evidence created a genuine issue of material fact as to whether conditions of administrative confinement, principally with regard to cell temperature and provision of hygiene items, violated the Eighth Amendment, precluding summary judgment on that claim. *Chandler v. Baird*, 926 F.2d 1057 (11th Cir. 1991). Here in the Second Circuit, "under abnormal or unusual SHU conditions, periods of confinement of less than 101 days may implicate a liberty interest." *Ortiz v. McBride,* 380 F.3d 649, 654 (2d Cir. 2004), *cert. denied,* 543 U.S. 1187 (2005) (citation omitted). The Court must consider both the conditions and their duration of the confinement and compare it to the conditions generally

**15**

prevailing in Connecticut Department of Corrections facilities.  *Sealey v. Giltner,*
197 F.3d 578, 586 (2d Cir. 1999).  The Defendants have admitted that the cell was
freezing and that the Plaintiff was confined in freezing conditions for
approximately 10 months.  The Court concludes that the plaintiff has established
a genuine issue of fact as to whether he had a constitutional liberty interest in
avoiding administrative segregation due to the length of time he remained
confined there and the nature and severity of conditions that he experienced
during that confinement as compared to the conditions in general population.
The motion for summary judgment is DENIED as to this prong of the due process
standard.

2.     Level of Process Due

The defendants contend that even if the conditions endured by the plaintiff
in administrative segregation were atypical and resulted in a significant hardship
that gave rise to a liberty interest in their avoidance, the plaintiff received all the
process that he was due under *Hewitt* in connection with the hearing to determine
whether he should be placed on administrative segregation.   The plaintiff argues
that he did not receive the due process protections mandated by *Hewitt* and
suggests that he should have been provided with the procedural protections set
forth in *Wolff v. McDonnell,* 418 U.S. 539 (1974) because his placement in the
long-term administrative segregation program was punitive or for disciplinary
reasons.

16

In *Hewitt,* the Supreme Court considered what process should be afforded an inmate who had been placed in administrative segregation pending an investigation into a disciplinary charge.  459 U.S. at 474.  The Court explained that it was appropriate to place an inmate in administrative segregation "when necessary to incapacitate an inmate who "represents a security threat" or to "complet[e] . . . an investigation into misconduct charges."  *Id.* at 476.  The Court held that in connection with an inmate's placement on administrative segregation, he or she "must merely receive some notice of the charges against him and an opportunity to present his views [either orally or in writing] to the prison official charged with deciding whether to transfer him to administrative segregation."  *Id.* at 476.

The "opportunity to present his views" need not be as formal as the proceedings held in connection with disciplinary charges, which must comply with the requirements of *Wolff v. McDonnell,* 418 U.S. 539, 563-72 (1974).  Rather, "[o]fficials must conduct an informal, nonadversary evidentiary review of the information in support of the prisoner's administrative confinement, and the proceeding must occur within a reasonable time following an inmate's transfer." *Hewitt,* 459 U.S. at 476 & n. 8 (quotations omitted).

In *Wolff*, the Supreme Court held that an inmate charged with a disciplinary violation that may result in the loss of good-time credits is entitled to written notice of the charges at least twenty-four hours in advance of the hearing, the opportunity to present witnesses and documentary evidence before an impartial

hearing officer or committee as long as doing so will not jeopardize prison safety and security, and a written statement including evidence relied on by the hearing officer in reaching his or her decision and the reasons for the disciplinary action. *Id.* at 564-66.  An inmate has no right to retained or appointed counsel at a disciplinary hearing, but in some circumstances may be entitled to the appointment of an advocate or assistance from a fellow inmate.  *Id.* at 570.

There are no facts to suggest that the placement of the plaintiff on administrative detention on October 4, 2013 pending the investigation and disposition of the disciplinary report or the plaintiff's formal placement on administrative segregation on November 15, 2013, after the hearing held on November 6, 2013, was for disciplinary or punitive purposes.  The Restrictive Housing Unit Status Order directed the plaintiff's placement on administrative detention on October 4, 2013 because the plaintiff's continued confinement in general population posed a serious threat to other inmates, himself and the security of facility due to his involvement in an assault on staff for which he had been issued a disciplinary report.  *See* Pl.'s Mem. Opp'n Mot. Summ. J., ECF No. 33 at 12, and Ex. O, ECF No. 33-2 at 43-44.

The plaintiff does not contest or challenge the fact that a disciplinary hearing was held on October 23, 2013, to address the infraction for assault on staff and that the hearing officer found him guilty and imposed sanctions, including confinement on punitive segregation for thirty days.  *See id.* Ex. E, ECF No. 33-2 at 41-49.   The amended complaint does not raise claims of due process

18

violations with respect to the disciplinary report or hearing held pursuant to that report.

The plaintiff does not dispute the fact that on November 6, 2013, a separate hearing was held to consider his placement on administrative segregation due to safety and security concerns.   *See id.*, Ex. G, ECF No. 33-2 at 1-3.  Based on evidence presented in connection with the administrative segregation hearing, the hearing officer determined that the plaintiff's non-compliance with staff orders, his behavior involving the assault on a correctional officer, his behavior requiring the use of a chemical agent in order to gain control over him, and prior disciplinary reports for contraband and flagrant disobedience warranted the plaintiff's placement on administrative segregation in order to protect the safety and security of staff, inmates, and the Department of Correction.  *See id.*  On November 15, 2013, Classification Director Lewis authorized the plaintiff's placement on administrative segregation.  *See id.*

The Supreme Court has held that where the inquiry draws more on the experience of prison administrators, and where the State's interest implicates the safety of other inmates and prison personnel, the informal, nonadversary procedures set forth in . . . *Hewitt,* provide the appropriate model."  *Wilkinson*, 545 U.S. 209, 228-29 (2005).  This is not a case in which the defendants acted in bad faith, labeling as administrative a confinement that could only be justified as punitive."  *Sealey v. Giltner,* 116 F.3d 47, 52-53 (2d Cir. 1997) (remanding to district court to consider whether confinement labeled as administrative "was

disciplinary in nature," requiring more than the informal procedures outlined in *Hewitt,* given prison administrator had placed inmate on administrative segregation despite fact all disciplinary charges had been dismissed).  Rather, at the time of the hearing to determine the plaintiff's placement on administrative segregation, a disciplinary hearing officer had already found the plaintiff guilty of the infraction charging him with assault on a correctional officer.   Thus, the consideration for placement on administrative segregation was made based on the safety and security of the plaintiff, other inmates and prison staff, rather than for disciplinary reasons.  Accordingly, the court concludes that the plaintiff's procedural due process claim regarding his placement on administrative segregation is governed by the Supreme Court's holding in *Hewitt*.

### a.   Notice

As indicated above, *Hewitt* requires that prior to an inmate's placement on administrative segregation, he or she "must merely receive some notice of the charges against him."  *Id.* at 476 & n.8.  The defendants argue that the plaintiff received written notice of the basis for the hearing to determine whether to place him on administrative segregation on November 1, 2013, prior to the administrative segregation hearing.

The plaintiff claims that he did not receive the notice of the hearing on November 1, 2013, but in fact received it seven days after the hearing, on November 13, 2013.   He provides copies of two hearing notices that he received on November 13, 2013.

20

The first notice reflects that Counselor Supervisor Bachan delivered the notice to the plaintiff on November 13, 2013 at 5:10 p.m. and that he signed for receipt of the notice on November 13, 2013.  *See* Pl.'s Local Rule 56(a)2 Statement, ECF No. 33-3 at ¶ 52 and Ex. I, ECF No. 33-2 at 13.  The second hearing notice reflects that Counselor Supervisor Bachan delivered the notice to him on November 13, 2013 at 5:12 p.m. and that he signed for receipt of the notice on November 13, 2013.  *See id.*, ECF No. 33-3 at ¶ 53 and Ex. J, ECF No. 33-2 at 14-15. Both copies also reflect a signature by Counselor Supervisor Bachan dated November 1, 2013.  See id., at Ex. I, ECF No. 33-2 at 13; Ex. J, ECF No. 33-2 at 14-15.

The copy of the notice submitted by the defendants reflects that Counselor Supervisor Bachan delivered the notice on November 13, 2013 and both she and the plaintiff signed the notice on November 1, 2013.   *See* Def.'s Local Rule 56(a)1 Statement, ECF No. 32-2 at ¶ 33 and Ex. I, ECF No. 32-12.  Counsel for the defendants contends that the disparity in the date of delivery and the date the notice was signed by Counselor Supervisor Bachan are due to a scrivener's error.  Counselor Supervisor Bachan, however, has not filed an affidavit explaining the discrepancy.  Nor has counsel for the defendants filed a reply to the plaintiff's memorandum addressing the discrepancies between his copies of the notice of the hearing and the defendants' copy of the notice of hearing.

The court concludes that there are disputed issues of fact as to whether the plaintiff received the notice of the administrative segregation hearing that set

21

forth the bases for considering his placement on administrative segregation prior to the hearing.   Thus, the defendants have not met their burden of showing that they are entitled to judgment as a matter of law with regard to the notice element of the procedural due process claim.

### b.   Opportunity to Present Views

The inmate who is being considered for placement on administrative segregation must also be given an "opportunity to present his views to the prison official charged with deciding whether to transfer him to segregation."   *Hewitt,* 459 U.S. at 476.   A prison official may decide that a written statement by the inmate is sufficient or may determine that a hearing during which an inmate may present his views orally is necessary.   *Id.*

There is no dispute that a hearing was held and that the plaintiff was present at the hearing.   Counselor Supervisor O'Neill avers that he was present at the administrative segregation hearing and acted as the recorder.   *See* O'Neill Aff. at ¶ 29, ECF No. 32-7, Ex. D.   He avers that the plaintiff submitted a written statement dated November 5, 2013, to the hearing officer during the hearing.   *See* id. at ¶ 32.   The plaintiff avers that he attended the administrative segregation hearing on November 6, 2013, but was unable to submit a written statement at that time.   *See* Milner Aff. at ¶ 18, ECF No. 33-1, Ex. B.   He states that he prepared and submitted a written statement to Counselor Supervisor Bachan later that day, after the hearing.   *See id.,* at ¶ 19.   Plaintiff prepared a written statement describing his version of the events that occurred on October 4, 2013, which

bears a date of November 5, 2013.  *See* ECF No. 33, Ex. H.  The Restrictive Status Report of Hearing for Placement or Removal dated November 6, 2013 reflects that the Plaintiff submitted a written statement.  *See* Ex. G, ECF No. 33-2 at 2.

The plaintiff contends that due to the fact that he did not receive a copy of the notice of the hearing prior to the hearing date, he could not adequately prepare or present his views in response to the charges against him.  The defendants contend that the evidence supports the plaintiff's receipt of the notice of the hearing on November 1, 2013, five days before the hearing.  Thus, they argue that the plaintiff was able to present his views in opposition to the charges at the hearing and in his written statement.   Because there is an issue of material fact with regard to whether the plaintiff received the notice prior to the hearing, the court cannot conclude that the plaintiff was able to adequately or meaningfully present his views in opposition to all of the reasons being considered for his placement on administrative segregation.  *See Proctor v. LeClaire*, 846 F.3d 597, 609 (2d Cir. 2017) ("It is well established that whenever process is constitutionally due, no matter the context, "[i]t ... must be granted at a meaningful time and in a meaningful manner.") (citations omitted); *Taylor v. Rodriguez*, 283 F.3d 188, 193 (2d Cir. 2001) ("Although the hearing requirement for placement in administrative segregation may be met by an informal, nonadversary proceeding . . . it is a bedrock requirement of due process that such a hearing be held at a meaningful time and in a meaningful manner. . . .  A hearing is not meaningful if a prisoner is given inadequate information about the

23

basis of the charges against him.") (quotations and citations omitted).
Accordingly, the defendants have not met their burden of demonstrating that they
are entitled to judgment as a matter of law as to this element of the procedural
due process claim.

c.   <u>Some Evidence</u>

The plaintiff contends that the decision to place him on long-term
segregation was not supported by sufficient evidence.  Due process requires that
the decision of the hearing officer be supported by "some evidence."
*Superintendent, Mass. Corr. Inst. v. Hill,* 472 U.S. 445, 455 (1985); *Manley v.
Bronson,* 657 F. Supp. 832, 839 (D. Conn. 1987).  The determination of whether the
standard of "some evidence" has been met, "does not require examination of the
entire record, independent assessment of the credibility of witnesses, or
weighing of the evidence.  Instead the relevant question is whether there is any
evidence in the record that could support the conclusion reached by the
disciplinary board."  *Hill,* 472 U.S. at 455–56.   Although *Hill* involved a
disciplinary finding, courts have applied the "some evidence" standard to
decisions to place inmates in administrative segregation.  *See Taylor*, 238 F.3d at
194 (applying some evidence standard from *Hill* to classification decision to place
inmate in close custody); *Davis v. Barrett*, No. 02-CV-0545 SR, 2011 WL 2421109,
at *3 (W.D.N.Y. June 13, 2011) ("In accordance with the standards for such a
hearing, the Court must find "some evidence" in the record that could support

24

the hearing officer's conclusion that placement in administrative segregation was warranted.") (citation omitted) .

The plaintiff concedes that he was charged with and found guilty of a Class A Level 2 assault on a correctional officer.  *See* Milner Aff. at ¶ 5, ECF No. 33-1, Ex. B & Disciplinary Process Summary Report, ECF No. 33-1, Ex. E.  The plaintiff argues, however, that a Level 2 assault on a correctional officer cannot be a basis for confinement on administrative segregation.

State of Connecticut Administrative Directive 9.4 describes Administrative Segregation as the "[p]lacement of an inmate on a restrictive housing status that results in segregation of the inmate whose behavior or management factors pose a threat to the security of the facility or a risk to the safety of staff or other inmates and that the inmate can no longer be safely managed in general population."  *See* ECF No. 33-2, Ex. K, Admin Directive 9.4(3)(B).  Although Administrative Directive 9.2(12)(C) describes specific conduct or conditions which warrant automatic consideration of an inmate for classification to administrative segregation, including a Level 1 assault on correctional staff, consideration for placement on administrative segregation is not limited to those specific conditions or types of conduct.  *See*, ECF No. 33-1, Ex. F, Admin. Directive 9.2(12)(C)(1).   Specifically, "assignment of an inmate to Overall Risk Level 5/Administrative Segregation shall be considered when any totality of facts, information or circumstances . . . indicates an immediate threat to safety and/or security of the public, staff or other inmates."  *See id.*, at 9.2(12)(C).   Thus, the

25

plaintiff's Level 2 assault on staff could form the basis of the defendants' decision to consider him for placement on administrative segregation as well as the decision to authorize his placement on administrative segregation, after a hearing.

On November 6, 2013, after the hearing, Counselor Supervisor Vazquez made a recommendation regarding the plaintiff's placement on Administrative Segregation based on evidence submitted in connection with the hearing, including a memorandum from Warden Cournoyer, incident reports, and the plaintiff's history of disciplinary reports.  *See* Ex. G, ECF No. 33-2 at 3.  Counselor Supervisor Vazquez concluded that based on the evidence and the plaintiff's recent disruptive, noncompliant, and violent conduct, he needed to be managed in a highly restrictive environment in order to ensure the safety and security of staff, other inmates, and the Department of Correction.  *See id.*  On November 15, 2013, Director of Classification and Population Management Lewis authorized the plaintiff's placement on administrative segregation.  *See id.*  The basis for Director Lewis's decision was the plaintiff's recent assault on a correctional officer.  *See id.*

*Hilli* only requires that some evidence support the decision to place an inmate in restrictive environment like administrative segregation.  Here, the evidence relied on by prison officials to place the plaintiff on administrative segregation included the plaintiff's assault on a correctional officer, the circumstances and conduct of the plaintiff leading up to the assault, the finding

26

of guilt as to the assault charge by a disciplinary hearing officer and the plaintiff's disciplinary history including infractions for contraband, flagrant disobedience and being a member of a security risk group.  *See id.*  at 2-3.  In addition, there was evidence that the Connecticut State Police were investigating possible criminal charges against the plaintiff.  *See id.* at 2.  Pursuant to Administrative Directive 9.2 which provides for placement of an inmate on administrative segregation if the inmate's "behavior or management factors pose[s] a threat to the security of the facility or a risk to the safety of staff or other inmates and . . . the inmate can no longer be safely managed in general population," the court concludes that there was some evidence to support the determination that the plaintiff should be placed on administrative segregation for safety and security reasons on November 15, 2013.   Thus, the motion for summary judgment is GRANTED as to this element of the procedural due process claim.

### C.   Qualified Immunity

The defendants argue that they are entitled to qualified immunity.  Qualified immunity protects "government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012).   Thus, in evaluating the argument that an official is entitled to qualified immunity a court must determine whether (1) the facts alleged or shown by the plaintiff state a violation of a statutory or constitutional right by the official, and if so, (2) was the constitutional right clearly established at the time of the

challenged conduct.  *See Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citation omitted).  The Supreme Court has held that district courts have the discretion to choose which of the two prongs of the qualified immunity standard to address first.  *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

In support of their qualified immunity argument, the defendants state that the plaintiff "has not adequately established a constitutional breach. . . . and has not established a constitutional violation against these defendants."  Mem. Supp. Mot. Summ. J. at 20.  As indicated in the previous sections of this ruling, the court has concluded that issues of material fact exist with regard to whether the plaintiff suffered a deprivation of a liberty interest as well as whether the process provided by the defendants met all the requirements of *Hewitt*.  These disputed issues of fact preclude a finding that the defendants are entitled to summary judgment as a matter of law on the procedural due process claims relating to the plaintiff's placement in Administrative Segregation.

The defendants do not dispute that the right to procedural due process protections set forth in *Hewitt*, *Sandin*, *and Wilkinson* with regard to placement in administrative segregation were clearly established at the time of the plaintiff's placement on administrative segregation.  The defendants do not otherwise address the second prong of the qualified immunity standard.  Thus, the court concludes that genuine issues of material fact preclude a determination that the defendants are entitled to qualified immunity.  *See Palmer*, 364 F.3d at 67 (factual issues as to typicality of confinement precluded summary judgment on qualified

immunity grounds on question of clearly established right); *Thomas v. Roach*, 165 F.3d 137, 143 (2d Cir. 1999) ("Summary judgment on qualified immunity is not appropriate when there are facts in dispute that are material to determination of reasonableness."); *Weyant v. Okst*, 101 F.3d 845, 858 (2d Cir. 1996) (holding that matter of officers' qualified immunity could not be resolved as a matter of law because determination whether it was reasonable for officers to believe their actions met established legal principles depended on disputed version of facts). Accordingly, the defendants are not entitled to summary judgment on the basis of qualified immunity.  The motion for summary judgment is DENIED on this ground.

## IV.   Conclusion

The Defendant's Motion for Summary Judgment [Doc. No. 32] is GRANTED as to the sufficiency of the evidence element of the Fourteenth Amendment due process claim and is DENIED in all other respects.  The Eighth Amendment claims of unconstitutional conditions of confinement and/or deliberate indifference to medical needs are DISMISSED for failure to state a claim upon which relief pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  The case will proceed on the liberty interest claim in avoiding administrative detention, procedural due process claim on the basis of notice and an opportunity to be heard, and the qualified immunity defense.

SO ORDERED this 16th day of March, 2017, at Hartford, Connecticut.

___/s/_____
VANESSA L. BRYANT
UNITED STATES DISTRICT JUDGE

29