UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| Kyron Milner, | : | |
|---|---|---|
| Plaintiff, | : | CIVIL ACTION NO. |
| v. | : | 3:14-cv-1544 (VLB) |
| | : | |
| Karl Lewis, et al., | : | April 14, 2017 |
| Defendants. | : | |

## MEMORANDUM OF DECISION

This Plaintiff, Kyron Milner ("Plaintiff" or "Milner"), brings this action claiming that his rights to procedural due process were denied when certain Department of Corrections employees ("Defendants")[1] failed to give him prior notice of a disciplinary hearing after which he was designated to administrative segregation. The Court scheduled the case for trial, the parties selected a jury and the case was unable to proceed on the first day evidence was scheduled to be introduced due to the parties' failure to complete discovery and prepare for trial in accordance with the Court's scheduling and other orders and accommodations. For the reasons that follow, the Court declares a mistrial in the interest of judicial integrity and fundamental fairness to the Plaintiff; appoints counsel to represent the Plaintiff; and reopens discovery for limited purposes as more fully stated below.

---

[1] After the Court's Decision on Defendants' Summary Judgment Motion, the remaining defendants are Deputy Commissioner Semple, Counselor O'Neill, Counselor Supervisors Vazquez and Bachan and Commissioner Dzurenda. [Dkt. 40.]

1

I. Background

Plaintiff had an altercation with corrections officers on October 4, 2013, as a result of which he was both administratively and criminally charged with assaulting a corrections officer. [Dkt. 40 at 4.] On November 6, 2013, an administrative hearing was held to determine whether Plaintiff should be placed in administrative segregation. *Id.* at 18-20. On November 15, 2013, as a result of the November 6 hearing, Plaintiff was transferred to another Department of Corrections ("DOC") facility and placed in administrative segregation for approximately 297 days. *Id.* at 12, 18-20. Plaintiff asserts Defendants failed to provide Plaintiff with 48 hours' notice before the hearing, as required by Department of Corrections ("DOC") policy. Defendants assert they did provide adequate notice. [Dkt. 50 at 9.]

Department of Corrections officials also reported the incident to the State Police. As a result, the Plaintiff was criminally charged with, prosecuted for, pleaded guilty to and was sentenced to a term of incarceration for assault on a corrections officer. [Dkt. 54-20.]

The parties agree that according to the Administrative Directives of the Department of Corrections, the date when Plaintiff was formally notified of the November 6, 2013 hearing should be reflected on a Notification of Hearing form ("Notice"). DOC Admin. Dir. 9.4 § 12.B. However, there are three non-identical versions of the Notice: one photocopy was kept within the Department of Corrections' exclusive custody; one duplicate original was kept in Plaintiff's "inmate master file," maintained by DOC, but accessible to Plaintiff upon request,

and another duplicate original was kept by Plaintiff, but accessed by DOC officials on at least one occasion when Plaintiff was transferred to Administrative Segregation. [Dkt. 54-1 at 8; 4/11/2017 oral argument on evidentiary issues.] The three versions of the Notice bear inconsistencies, and both parties rely on versions of the Notice to support their positions. When Defendants moved for summary judgment, they submitted the photocopied Notice within DOC's exclusive control, which indicates Plaintiff received and signed the Notice on November 1, 2013, five days before the hearing. [Dkt. 19-12.] Plaintiff submitted with his opposition to summary judgment the two other versions of the Notice, which indicate Plaintiff did not receive or sign the Notice until November 13, 2013 – seven days after the hearing. [Dkt. 33-2 at 13, 15.]

Due to the discrepancies between the Notification of Hearing forms, the Court found disputed issues of material fact and denied summary judgment as to whether Plaintiff received sufficient notice before the hearing to determine his administrative segregation. [Dkt. 40 at 21.] As a predicate to that procedural due process claim, the Court found a genuine issue of material fact as to whether Plaintiff held a constitutional liberty interest in avoiding administrative segregation due to the length of time he remained there and the nature and severity of conditions he experienced during that confinement as compared to the conditions in general population. *Id.* at 16.

On April 8, 2016, the Court entered a scheduling order imposing a discovery deadline of July 1, 2016, a joint trial memorandum deadline of March 1, 2017, and a jury selection date of April 4, 2017. Plaintiff requested a 60-day

3

extension of the discovery deadline on April 15, 2016, but failed to show good cause why in the exercise of due diligence he was not able to comply with the Scheduling Order. [Dkt. 25; Dkt. 26.] Jury selection took place on Monday, April 3, 2017. The first day of evidence was scheduled for the following Tuesday, April 11, 2017 at 8:30 a.m. to address preliminary matters, and the jury was scheduled to enter the courtroom at 9:30 a.m.

Following jury selection the Court conducted a hearing during which it explained to the Plaintiff what he needed to do to present his case logistically and the importance of identifying, marking and organizing his evidence and presenting his case. The Court also gave the Plaintiff exhibit stickers, highlighters, and Post-its to aid in organizing his evidence. Counsel for the Defendants, all of whom are Department of Corrections officials and corrections officers, was present in the courtroom when the Court explained to the Plaintiff the need to prepare and provided him with supplies with which to do so. The Court also directed the courtroom deputy to give the Plaintiff a tutorial on courtroom technology.

Defense counsel advised the Court that the Plaintiff had not identified to her the exhibits he intended to introduce. In response, the Plaintiff stated that he intended to introduce at trial the exhibits he filed in opposition to the Defendants' motion for summary judgment and that to assure clarity he would have his counselor forward these exhibits to Defendants' counsel. The Court prepared exhibit binders consisting of the exhibits filed by the Plaintiff in opposition to summary judgment. Later the Clerk of the Court received from Plaintiff's

4

Department of Corrections counselor documents which were not included as exhibits in opposition to the motion for summary judgment with no indication of their intended purpose. As they were in the possession of the Clerk of the Court these documents were uploaded to the docket. [Dkt. 53.]

On Saturday, April 8, 2017, after 10:00 p.m., with the presentation of evidence to begin on Tuesday, April 11, 2017, Defendants filed a Motion to Dismiss pursuant to 28 U.S.C. § 1915A. [Dkt. 54.] In their Motion, Defendants argued that the Notice which was kept in Plaintiff's inmate master file was altered to artificially reflect that Plaintiff signed the Notice on November 13, 2013, after the date of the hearing, rather than November 1, 2013. *Id.* at 5. The motion to dismiss relied upon and had attached thereto a report of a forensic examination of one of the three hearing notices. As discussed below, the forensic analysis did not comport with the Court's Scheduling Order, the rules of procedure or the rules of evidence.

On the first day of trial, the Department of Corrections did not produce the Plaintiff until approximately 10:00 a.m, one and a half hours after oral argument on preliminary matters was scheduled to begin. Upon his arrival the Plaintiff changed into the shirt, tie and jacket supplied by the Court. When the proceedings convened, the Plaintiff informed the Court that he was unprepared to proceed because the Department of Corrections officials confiscated the exhibit stickers, Post-its and highlighters given to him by the Court to aid in trial preparation, and he was unable therefore to organize and mark his exhibits. The Court attempted to proceed with trial by providing the Plaintiff a tabbed binder of

the exhibits he submitted in opposition to summary judgment with a corresponding table of contents.

Although the Plaintiff confirmed that the binder did in fact contain the exhibits he intended to offer, shortly after the jury was brought into the courtroom and the Court issued a preliminary charge, the Plaintiff began to offer exhibits which were not in the binder. Among those was an exhibit that Defendants sought to impeach using an expert report commissioned on April 5, 2017, authored on April 6, 2017, and first disclosed at approximately 10:30 p.m. on Saturday April 8, 2017, when it was electronically filed in support of Defendants' Motion to Dismiss. Although the discrepancy was apparent in the summary judgment briefing and was the basis for the Court's denial of summary judgment, Defendants did not seek the forensic analysis until approximately eight months after dispositive motions were filed, and less than a week before the presentation of evidence was scheduled to commence. As the parties attempted to identify the documents the Plaintiff intended to offer at trial, discrepancies between copies of other documents emerged.

Defendants' newly disclosed expert report describes the forensic examination conducted on April 5, 2017 by the State of Connecticut's Department of Emergency Services and Public Protection Division of Scientific Services. [Dkt. 54-7.] The report states that Forensic Science Examiner-Analyst Greg Kettering and Forensic Science Examiner Technical Reviewer Lisa Ragaza examined the ink used to write the date on the original Notice. *Id.* at 2-3. The examiners state they found three discrepancies between the number 3 in the date

11/1<u>3</u>/13 and the other digits: dissimilar ink chemical properties, dissimilar pen pressure, and an absence of ink line striae present on the other digits. *Id.* at 2. Defendants argue the report concludes that "someone used the same writing instrument to author everything in the day column with the exception of the '3'" which was "authored with a different writing instrument." [Dkt. 54-1 at 7.] Defendants conclude from this that Plaintiff fraudulently altered the original Notice kept in his inmate master file to state he did not receive notice of the administrative hearing until November 13, 2013, when in fact he received notice on November 1, 2013. *Id.* at 7-8.

Defendants moved the Court to dismiss the case, arguing that the report demonstrates that there is no question of fact that Plaintiff received notice five days before his hearing. Defendants argue that in light of this, the Amended Complaint is frivolous and should be dismissed under 28 U.S.C. § 1915A and *Campos v. Smith*, 418 F. Supp. 2d 277 (W.D.N.Y. 2006). *Id.* Defendants also submit that Plaintiff committed a fraud on the Court and committed perjury, and encourage the Court to take appropriate actions. *Id.*

II. <u>Analysis of Defendants' Motion to Dismiss</u>

    a. <u>Defendants' Frivolity Claim</u>

Under 28 U.S.C. § 1915A, where a "prisoner seeks redress from a governmental entity or officer or employee of a governmental entity . . . the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted."

7

In support of their motion, Defendants cite *Campos*, 418 F. Supp. 2d at 277. In that case, an inmate offered into evidence a document which was inherently unreliable because it referred to events which had not occurred as of the date it was purportedly authored. *Id*. at 279. The document was also maintained in the exclusive possession of the party who proffered it. *Id*. Because the document was falsified on its face, the Court dismissed the complaint. *Id*. at 279. From this, Defendants conclude Plaintiff's Amended Complaint should also be dismissed because the original Notice kept in the inmate master file was altered.

The case at bar is distinguishable from *Campos*. First, in *Campos*, there was only one document. Here, there are three. Second, in *Campos,* the document at issue was facially falsified. Here it is unclear which of the three disparate notices is a true copy. Third, in C*ampos,* the document at issue was in the exclusive possession of the party ordering it. Here the document was not in the exclusive possession of the Plaintiff. Indeed, none of the documents was in the exclusive possession of the Plaintiff. Two of the documents were in the possession of both Plaintiff and Defendants at various times (Plaintiff's version of the Notice having been given to him by the DOC and the version of the Notice which was placed in Plaintiff's master file), and one version which was maintained exclusively by the DOC, Defendants' employer.[2] In addition, there are also irregularities in the Defendant's recordkeeping which preclude dismissal.

---

[2] **Although Plaintiff now admits having accessed his master inmate file, it is noteworthy that the Defense erroneously claims the DOC Program Activity Log establishes that access on October 31, 2014 specifically. [Dkt. 54-1 at 5.] The Program Activity Log Defendants reference includes no signature from Plaintiff; it was created by the DOC and contains only DOC staff signatures. [Dkt. 30-2 at 50.] It does not constitute an admission by Plaintiff.**

8

The Defense admitted that the version of the Notice maintained in the Plaintiff's master file was initially missing, and was ultimately located in another section of the master file, out of chronological order. [Dkt. 54-1 at 6; 4/11/2017 oral argument on evidentiary issues.] Although Defendants offer evidence that the Plaintiff accessed his master file and alteration of the document may have advanced the interests of the Plaintiff, Defendants do not offer conclusive evidence that the document was in the master file when the Plaintiff accessed the file, or that Plaintiff altered the document.

Nor does the advocate investigation report dated November 5, 2013 provide conclusive evidence that Plaintiff altered the document. [Dkt. 54-12.] Plaintiff signed the report on November 5, 2013, the day before the hearing at issue, but the report states only that Plaintiff will file a written statement "at hearing." *Id.* at 2. It does not indicate that Plaintiff had notice of the November 6, 2013 hearing before November 5, 2013, and DOC administrative directive 9.4 entitled Plaintiff to two business days' notice. In addition, the fact that Plaintiff challenged the outcome of the hearing to Commissioner Arnone but did not allege that he was not given adequate notice at that time is persuasive, but not dispositive. At best, the Defendant has raised a genuine issue of material fact. In addition, Defendants admit that following the hearing, Plaintiff was transferred to an administrative segregation unit in a different Department of Corrections facility. They further acknowledge that upon the transfer of an inmate, the property of the inmate is packed and searched by Department of Corrections officials before they are returned to the inmate. Therefore the record indicates that the Plaintiff did not

9

have exclusive possession of the original which was given to him to keep. Here, unlike *Campos*, the document offered by the Plaintiff is not the only document, and it is not facially altered. In addition, no documents were in the exclusive possession and control of the Plaintiff. While Defendants offer strong circumstantial evidence from which a jury could reasonably conclude that the Plaintiff altered a document, it is not irrefutable and thus genuine issues of material fact remain to be decided by a jury.

Further, the Court has already made the Section 1915A frivolity determination in an Initial Review Order [Dkt. 6], whereupon the Second Circuit issued a mandate that the Court consider Plaintiff's Motion for Leave to File an Amended Complaint correcting deficiencies in the Complaint [Dkt. 14], after which the Court found Plaintiff stated a cognizable claim [40]. As the Court stated in its Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment, the Court does not find that the Plaintiff has failed to state a claim or asserts a frivolous claim. For the reasons stated on the legal authority cited in its ruling in Defendants' motion for summary judgment and herein, there is a genuine issue of material fact which must be decided by a jury.

    b. <u>Defendants' Expert</u>

Even if the Court could resolve the questions of fact presented in Defendants' Motion to Dismiss, Defendants support their contention that Plaintiff altered the original Notice with an untimely and insufficient expert disclosure. The Federal Rules of Civil Procedure require disclosure of an expert "at the times and in the sequence that the court orders," and in the absence of a court order,

"at least 90 days before the date set for trial or for the case to be ready for trial; or if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party . . . , within 30 days after the other party's disclosure." Fed. R. Civ. P. 26(a)(2)(D)(i)-(ii). The purpose of this rule is to assure the fairness of the discovery process and trial by affording both parties a fair opportunity to present and defend their case. The Defendants have not satisfied any of these standards.

Defendant submitted one of the three versions of the Notice for scientific examination after jury selection on April 4, 2017, eight months after the July 1, 2016 discovery deadline imposed by the Court. [Dkt. 24 (Amended Scheduling Order); Dkt. 54-7 at 1 (scientific report showing date of examination request as April 4, 2017).] The analysis was completed and the report issued in one day, on April 5, 2017. [Dkt. 54-7 at 1.] It was filed and electronically served on the Plaintiff on Saturday, April 8, 2017, one business day before the first day of trial. [Dkt. 54.]

Defendants offer no reason why the expert was not engaged, the analysis was not done, the expert was not disclosed, and the expert report was not served on the Plaintiff during the lengthy discovery period. At the very least, Defendants were aware that the two copies of the Notice kept within DOC custody were inconsistent when they moved for summary judgment (but asserted the different dates were a scrivener's error). [Dkt. 19-2 at 16.] As defense counsel testified while arguing evidentiary issues on April 11, 2017, Defendants did not scrupulously compare the two versions of the form kept in the Department of Corrections' files before the eve of trial. In addition, at no time did Defendants

seek production of Plaintiff's third version of the form, despite knowing that under DOC policy Plaintiff possessed a copy of the Notice which might have shed light on the inconsistency between the two versions of the Notice in DOC custody. Defendants have offered no excuse for delaying their expert discovery; nor, it seems, could they. Nor can Defendants offer the report as rebuttal because they were aware of the discrepancy and could have anticipated that the document would be offered at the time of the summary judgment briefing. *See* Fed. R. Civ. P. 26(a)(2)(D)(ii) (A party may disclose rebuttal expert opinion outside of the date set forth by a scheduling order or Rule 26(a)(2)(D)(i) "if the evidence is intended solely to contradict or rebut evidence on the same subject matter *identified by another party*.")

The tardy disclosure of Defendants' report is unduly prejudicial to the Plaintiff as he has no opportunity to rebut it. Even if Plaintiff had more than one business day between disclosure and the start of trial, the report does not include sufficient information for Plaintiff to craft a rebuttal: the expert's credentials are not disclosed, the rationale for the tests chosen is not disclosed, other available testing is not disclosed, and the efficacy of the tests conducted is not disclosed. Nor is there any indication whether the methods used in the report have been peer reviewed or accepted in the scientific field. The report entirely fails to meet the requirements of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 26(a)(2)(B) (requiring a "complete statement of all opinions the witness will express and the basis and reasons for them; the facts or data considered by the witness in forming them; any exhibits that will be used to summarize or support

them; the witness's qualifications, including a list of all publications authored in the previous 10 years; a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and a statement of the compensation to be paid for the study and testimony in the case"). Together with the untimeliness of the expert disclosures, these deficiencies utterly deprive Plaintiff of any ability to challenge the report, in total contravention of the discovery and production rules, rendering its admission fundamentally, and potentially critically unfair to Plaintiff.

III. <u>Appointment of Counsel</u>

Finally, the Second Circuit repeatedly has cautioned the district courts against the routine appointment of counsel. *See, e.g.*, *Hendricks v. Coughlin,* 114 F.3d 390, 393 (2d Cir. 1997); *Cooper v. A. Sargenti Co.*, 877 F.2d 170, 172 (2d Cir. 1989). In deciding whether to appoint counsel the Court must consider the litigant's "competence to proceed pro se, the complexity of the issues," and any other reason why the appointment of counsel would be more likely to lead to a just outcome. *Machadi v. Apfeldo,* 276 F.3d 103, 108 (2d Cir. 2002). Here, the Court declined to appoint counsel initially as the matter did not seem to be complex. "Even after an initial denial of the motion to appoint counsel, district courts should continually assess whether counsel should be appointed because the need for the appointment of counsel may not have become apparent at the time of the initial denial of the motion to appoint counsel. There will be cases where, for example, the issues are sufficiently significant or complex so that a

non-attorney [party] will not be able to proceed without compromising [his] rights." *Id.*

Furthermore, although in *Boyd v. Henderson,* 555 F.2d 56, 61 (1971), the Second Circuit held that "the [S]ixth [A]mendment right to counsel attaches only when there has been a 'formal charge, preliminary hearing, indictment, information' with respect to the *particular* crime as to which the suspect is being identified," (emphasis added), the fact that Department of Corrections officials have previously pursued criminal prosecution of the Plaintiff and have here charged Plaintiff with the commission of a criminal offense, Defendants' request that this Court find that Plaintiff committed perjury or a fraud on the Court comes perilously close so as to warrant the Court's reconsideration of its initial conclusion that the Plaintiff could prosecute this case pro se. For these reasons, the Court reconsiders its decision not to appoint counsel and determines that the complexities of the case, the Plaintiff's demonstrated inability to prosecute the case, and the fundamental fairness of affording Plaintiff an opportunity to fully understand and safeguard his penal interests warrant the appointment of counsel for the Plaintiff.

IV. <u>Conclusion</u>

Judicial integrity and fundamental fairness outweigh the need for judicial efficiency, and demand that the parties be afforded another opportunity to fully prepare to prosecute and defend this case. For these reasons and based on the reasoning outlined above, the Court hereby: (1) declares a mistrial; (2) orders the Clerk to appoint counsel for the Plaintiff; (3) closes the case pending the

14

**appearance of counsel for the Plaintiff; (4) grants the Plaintiff leave to reopen the case on the later of (a) 365 days after the date of this Order, or (b) 182 days (6 months) after the date counsel files an appearance on behalf of Plaintiff; (5) reopens discovery as it relates to the documents marked as Plaintiff's Exhibits 29, 17, 18, 40, and 43 during the first day of trial, April 11, 2017, as well as any other exhibit Plaintiff sought to offer into evidence on April 11, 2017 which Plaintiff did not timely identify in accordance with the Scheduling Order [Dkt. 24], including expert discovery on the authenticity of such proposed exhibits; (6) orders counsel for Defendants to initiate and conduct a Rule 26(f) planning meeting with Plaintiff's counsel and to request a Rule 16 conference with the Court within 35 days after the date Plaintiff's counsel files an appearance.**

                          **IT IS SO ORDERED.**

                          **/s/**
                          **Hon. Vanessa L. Bryant**
                          **United States District Judge**

**Dated at Hartford, Connecticut: April 14, 2017**